**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

WYDOVE BROWN, :
: Civil Action No. 13-2552 (SDW)
         Petitioner, :
:
         v. : **OPINION**
:
UNITED STATES OF AMERICA, :
:
         Respondent. :

**WIGENTON**, District Judge:

Presently before the Court is the motion of Wydove Brown ("Petitioner") to vacate, set aside, or correct his sentence brought pursuant to 28 U.S.C. § 2255. (ECF No. 1). Petitioner filed his motion on or about March 18, 2013. (ECF No. 1). Following this Court's order to answer, the Government filed a response (ECF No. 9). Petitioner did not file a reply. On August 19, 2014, the Government filed a supplemental letter (ECF No. 10), to which Petitioner responded. (ECF No. 11). For the following reasons, this Court will deny Petitioner's motion to vacate his sentence, and will deny Petitioner a certificate of appealability.

**I. BACKGROUND**

In the court's opinion affirming Petitioner's conviction and sentence, the Third Circuit provided the following summary of the facts underlying this case:

> On November 12, 2008, two cars filled with police officers from the Newark Police Department saw a group of men, including [Petitioner], in a notorious open air drug market. After seeing the police, the men dispersed, and Sergeant William Connolly ("Connolly") observed [Petitioner] cross South 15th Street in Newark, NJ, while holding something at his waistband. Concerned that [Petitioner] had a gun, the officers stopped their cars, and Connolly instructed [Petitioner] to stop. According to the officers, [Petitioner] continued walking and crouched down near a minivan,

placing the gun on the ground near a tire. Another officer heard the gun hit the ground and the officers apprehended [Petitioner].

As part of an omnibus motion, [Petitioner] moved to suppress the gun. In support of the motion, he submitted a certification articulating a different set of facts leading to his arrest. According to [Petitioner], the police confronted him on the street, searched him for no reason, and took his keys. His keys included the keys to a car that he had borrowed to drive to the area. He stated that the police opened the vehicle, searched it, and found a gun inside the glove compartment.

The District Court conducted a hearing on the various issues raised in [Petitioner]'s omnibus motion, but it did not resolve the suppression issue. During the hearing, the parties disclosed that [Petitioner]'s license was suspended at the time of his arrest, and the parties did not contest that particular fact. The District Court accepted [Petitioner]'s articulation of the facts for the purpose of resolving the motion to suppress and denied the motion. The Court held that [Petitioner] did not have a legitimate expectation of privacy in the vehicle as an unlicensed driver and, therefore, lacked standing to challenge the search of the vehicle. [Petitioner] filed a motion for reconsideration and requested a full evidentiary hearing on the issue of standing. The District Court held the motion for reconsideration in abeyance, deciding to wait until after it had heard all of the evidence presented at trial. After hearing the evidence presented at trial, the District Court gave [Petitioner] an opportunity to offer additional evidence on the motion to suppress. [Petitioner] did not offer new evidence and the Court again found that [Petitioner] lacked standing.

[Petitioner]'s first trial ended in a mistrial. Before the start of the second trial, [Petitioner] moved the Court to relieve his current lawyer from representing him and to have the Court appoint new counsel. The Court denied his request. After hearing all of the evidence in the second trial, defense counsel asked the Court to reopen the suppression motion and consider it on its merits in light of the trial testimony. The Court ruled that it would not revisit its prior determination on standing because [Petitioner] did not present any persuasive grounds for reopening the motion. The Court further reasoned that the weighing of the evidence on the issue of suppression would yield the same result—the police officers' testimony regarding recovery of the gun would stand. In the Court's view, when comparing the officers' testimony to [Petitioner]'s certification, [Petitioner]'s version of the facts was entirely incredible. Hence even if the Court determined that [Petitioner] had

2

> standing, the Court would have allowed the gun and the accompanying testimony into evidence.
>
> A second jury found [Petitioner] guilty of being a felon[1] in possession of a gun. [Petitioner] was sentenced to 120 months of imprisonment.

*United States v. Brown*, 454 F. App'x 44, 46-47 (3d Cir. 2011).

Petitioner appealed his sentence, raising the following claims: that the trial court erred in permitting Petitioner to be shackled at trial, that the trial court erred in denying Petitioner's request for substitute counsel, that the trial court erred in denying Petitioner's request for a hearing on his motion to suppress, that the trial court erred in denying the motion to suppress, and that the trial court erred in allowing the Government to "vouch" for witnesses during summation. *Id.* at 47. The Third Circuit affirmed Petitioner's conviction by way of an opinion issued on December 8, 2011. *Id.* at 47-51. In addressing Petitioner's claim that the court improperly denied Petitioner's request for substitute counsel, the Third Circuit held that the trial court engaged in the correct inquiry and did not abuse its discretion in denying Petitioner's motion. *Id.* at 48-49. In so doing, the Third Circuit specifically noted the trial court's finding that "defense counsel had performed outstandingly during Brown's first trial," ultimately achieving a mistrial in the face of strong evidence of guilt. *Id.* at 48. Following the Third Circuit's affirming of his conviction, Petitioner filed a petition for certiorari, which was denied by the Supreme Court on April 23, 2012. *See Brown v. United States*, --- U.S ---, 132 S. Ct. 1988 (2012).

Petitioner filed his initial motion to vacate his sentence on April 18, 2013. (ECF No. 1). On May 6, 2013, this Court entered an order advising Petitioner of his rights under *United States*

---

[1] As of the time of his sentencing in this matter, Petitioner's criminal history included convictions for resisting arrest, theft, possession of a controlled dangerous substance with intent to distribute within 1000 feet of a school, simple assault, aggravated assault, burglary, and robbery. (*See* PSR at ¶ 32-61).

*v. Miller*, 197 F.3d 644 (3d Cir. 1999). (ECF No. 2). In response to that order, Petitioner filed a "First Amended Supplemental Petition" in which he provided further facts and allegations in support of his claims.[2] (ECF No. 3). This Court thereafter ordered the Government to answer the petition. (ECF No. 5). The Government filed its response on September 9, 2013. (ECF No. 9). Petitioner did not file a reply brief. On August 19, 2014, the Government filed a supplemental letter providing the results of a DOJ investigation into the Newark Police Department. (ECF No. 10). On September 2, 2014, Petitioner filed a letter response to the Government's supplement. (ECF No. 11).

## II. DISCUSSION

### A. Legal Standard

A prisoner in federal custody may file a motion pursuant to 28 U.S.C. § 2255 challenging the validity of his or her sentence. Section 2255 provides, in relevant part, as follows:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to

---

[2] Petitioner's intention appeared to be to file this document as a supplemental brief in support of his original § 2255 motion. Thus, this Court construes both ECF Nos. 1 and 3 together as setting forth the entirety of Petitioner's claims.

This Court also notes that, in his amended supplemental petition, Petitioner reiterates the claims he raised on direct appeal in his recitation of facts. It appears that Petitioner used the Third Circuit's opinion as an aid in drafting his supplement, and that Petitioner quotes that opinion not to re-raise his direct appeal claims, but rather as a summary of the Third Circuit's rulings. This Court therefore does not construe Petitioner as attempting to re-raise his direct appeal claims in his current § 2255 motion. Even if Petitioner had wished to re-raise those claims here, he would be unable to do so as a § 2255 petitioner may not raise in his § 2255 motion those claims which were raised and denied on the merits on direct appeal. *See United States v. DeRewal*, 10 F.3d 100, 105 n. 4 (3d Cir. 1993) (internal quotations omitted); *see also United States v Travillion*, 759 F.3d 281, 288 (3d Cir. 2014) ("issues resolved in a prior direct appeal will not be reviewed again by way of § 2255 motion").

4

>impose such a sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255. Unless the moving party claims a jurisdictional defect or a constitutional violation, to be entitled to relief the moving party must show that an error of law or fact constitutes "a fundamental defect which inherently results in a complete miscarriage of justice, [or] an omission inconsistent with the rudimentary demands of fair procedure." *United States v. Horsley*, 599 F.2d 1265, 1268 (3d Cir. 1979) (quoting *Hill v. United States*, 368 U.S. 424, 429 (1962)), *cert. denied* 444 U.S. 865 (1979); *see also Morelli v. United States*, 285 F. Supp. 2d 454, 458-59 (D.N.J. 2003).

### B. Analysis

### 1. An evidentiary hearing is not required

A district court need not hold an evidentary hearing on a motion to vacate where "the motion and files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); *United States v. Booth,* 432 F.3d 542, 545 (3d Cir. 2005); *United States v. Day*, 969 F.2d 39, 41-42 (3d Cir. 1992). "Where the record, supplemented by the trial judge's personal knowledge, conclusively negates the factual predicates asserted by the petitioner or indicate[s] that petitioner is not entitled to relief as a matter of law, no hearing is required." *Judge v. United States*, 119 F. Supp. 3d 270, 280 (D.N.J. 2015); *see also Government of Virgin Islands v. Nicholas*, 759 F.2d 1073, 1075 (3d Cir. 1985); *see also United States v. Tuyen Quang Pham*, 587 F. App'x 6, 8 (3d Cir. 2014); *Booth*, 432 F.3d at 546. For the reasons set forth below, Petitioner has failed to establish a prima facie case of ineffective assistance of counsel, and no hearing is required for the resolution of this matter.

## 2. Petitioner's ineffective assistance of counsel claims

Petitioner asserts that his trial counsel was constitutionally ineffective. The standards applicable to such a claim are well established:

> [c]laims of ineffective assistance are governed by the two-prong test set forth in the Supreme Court's opinion in *Strickland v. Washington*, 466 U.S. 668 (1984). To make out such a claim under *Strickland*, a petitioner must first show that "counsel's performance was deficient. This requires [the petitioner to show] that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* at 687*; see also United States v. Shedrick*, 493 F.3d 292, 299 (3d Cir. 2007). To succeed on an ineffective assistance claim, a petitioner must also show that counsel's allegedly deficient performance prejudiced his defense such that the petitioner was "deprive[d] of a fair trial . . . whose result is reliable." *Strickland*, 466 U.S. at 687; *Shedrick*, 493 F.3d at 299.
>
> In evaluating whether counsel was deficient, the "proper standard for attorney performance is that of 'reasonably effective assistance.'" *Jacobs v. Horn*, 395 F.3d 92, 102 (3d Cir. 2005). A petitioner asserting ineffective assistance must therefore show that counsel's representation "fell below an objective standard of reasonableness" under the circumstances. *Id.* The reasonableness of counsel's representation must be determined based on the particular facts of a petitioner's case, viewed as of the time of the challenged conduct of counsel. *Id.* In scrutinizing counsel's performance, courts "must be highly deferential . . . a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.
>
> Even where a petitioner is able to show that counsel's representation was deficient, he must still affirmatively demonstrate that counsel's deficient performance prejudiced the petitioner's defense. *Id.* at 692-93. "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693. The petitioner must demonstrate that "there is a reasonable probability, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694; *see also Shedrick*, 493 F.3d at 299. Where a

6

> "petition contains no factual matter regarding *Strickland's* prejudice prong, and [only provides] . . . unadorned legal conclusion[s] . . . without supporting factual allegations," that petition is insufficient to warrant an evidentiary hearing, and the petitioner has not shown his entitlement to habeas relief. *See Palmer v. Hendricks*, 592 F.3d 386, 395 (3d Cir. 2010). "Because failure to satisfy either prong defeats an ineffective assistance claim, and because it is preferable to avoid passing judgment on counsel's performance when possible, [*Strickland*, 466 U.S. at 697-98]," courts should address the prejudice prong first where it is dispositive of a petitioner's claims. *United States v. Cross*, 308 F.3d 308, 315 (3d Cir. 2002).

*Judge*, 119 F. Supp. 3d at 280-81. In his petition and amended petition, Petitioner essentially asserts two claims: that counsel was ineffective in his investigation of Petitioner's case – specifically in investigating the histories of the arresting and testifying officers, and that counsel was ineffective in advising Petitioner in regards to a plea agreement offered after the initial mistrial. This Court will address each claim in turn.

**a. Petitioner's investigation based claim**

Petitioner's chief contention is that his trial counsel was ineffective in failing to fully investigate the officers involved in Petitioner's case for evidence of past wrongdoing or a pattern of false arrests and the like which could have been used to impeach the officers' credibility.[3] In *Strickland*, the Supreme Court held that trial counsel "has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.

---

[3] Petitioner at least partially suggests that this claim amounts to counsel's failure to seek *Brady* material. Because the history of the officers would have provided impeachment, rather than direct, evidence, Petitioner's claim would more properly be that counsel failed to request and discern *Giglio* material. *See Giglio v. United States*, 405 U.S. 150, 154 (1972) (holding that the *Brady* rule applies to impeachment evidence where the reliability of the witness to be impeached is determinative of guilt or innocence). In any event as this Court explains below, Petitioner's counsel clearly sought, and obtained, the available material, and Petitioner fails to show that counsel's performance was deficient.

7

In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." 466 U.S. at 691. "The failure to investigate a critical source of potentially exculpatory evidence may present a case of constitutionally defective representation," and "the failure to conduct any pretrial investigation generally constitutes a clear instance of ineffectiveness." *United States v. Travillion*, 759 F.3d 281, 293 n. 23 (3d Cir. 2014) (internal quotations omitted); *see also United States v Gray*, 878 F.2d 702, 711 (3d Cir. 1989) (noting that a complete absence of investigation usually amounts to ineffective assistance because a counsel cannot be said to have made an informed, strategic decision not to investigate); *United States v. Baynes*, 622 F.2d 66, 69 (3d Cir. 1980).

Where a Petitioner can show that counsel's failure to investigate amounts to deficient performance, he must still show prejudice. In order to do so,

> a defendant basing an inadequate assistance claim on his or her counsel's failure to investigate must make "a comprehensive showing as to what the investigation would have produced. The focus of the inquiry must be on what information would have been obtained from such an investigation and whether such information, assuming admissibility in court, would have produce a different result."

*United States v. Askew*, 88 F.3d 1065, 1073 (D.C. Cir. 1996) (quoting *Sullivan v. Fairman*, 819 F.2d 1382, 1392 (7th Cir. 1987); *see also United States v. Lathrop*, 634 F.3d 931, 939 (7th Cir. 2011) ("[w]hen a petitioner alleges that counsel's failure to investigate resulted in ineffective assistance, the petitioner has the burden of providing the court with specific information as to what the investigation would have produced"); *United States v. Green*, 882 F.2d 999, 1002 (5th Cir. 1989) ("A defendant who alleges a failure to investigate on the part of his counsel must allege with

specificity what the investigation would have revealed and how it would have altered the outcome" of Petitioner's case); *accord Untied States v. Garvin*, 270 F. App'x 141, 144 (3d Cir. 2008).

Here, Petitioner alleges that, had his counsel fully investigated the officers involved in his case, counsel would have discovered a pattern of illegal activity by the Newark Police Department, and would have found out that at least one of the officers involved had been the subject of civilian complaints. In support of this assertion, Petitioner provides a petition filed by the New Jersey ACLU in September 2010. (Document 3 attached to ECF No. 3 at 30-48). Thus, this Court must initially note that the basis for Petitioner's claim, the ACLU report, was not itself available to counsel as it was first filed some three months after Petitioner was sentenced. Clearly, then, the ACLU report itself was not discoverable during counsel's pre-trial investigation, and the question in this case is instead whether reasonably effective counsel could and should have been able to locate potential impeachment evidence based on the past conduct of the officers in this case.

Given the trial record, this Court need not guess at the answer. In his omnibus motion, counsel specifically requested that the Government turn over any and all *Brady* and *Giglio* material, and also directly moved the Court to turn over any evidence affecting the credibility of the officers involved in Petitioner's arrest. (*See* Omnibus Motion, Document 2 attached to ECF No. 9 at 9). Indeed, counsel explained this request as follows:

> [i]n this case, the credibility of the officers is critical. [Petitioner] has certified to this court that the officers have not told the truth about the circumstances of the recovery of the firearm. Thus, the central issue at this trial is the credibility of the officers.
>
> It is my understanding, based upon a previous case I handled involving these officers, that at least one citizen complaint has been filed against these officers.
>
> Accordingly, the Court should conduct an in camera review of any such material. If such exists, it should be provided to the

9

>    defense so the defense may conduct an investigation that may well
>    lead to relevant evidence in this trial.

(*Id.* at 9-10).  This request led the Government to turn over *Giglio* material as to one of the officers, as well as to provide the trial judge with copies of other information which the Government did not believe to be *Giglio* material for an in camera review.  (*See* Motion Hearing Transcript, Document 3 attached to ECF No. 9 at 21-22).  Indeed, counsel pressed the court for such a review, and continued to request that any relevant impeachment evidence be provided.  (*Id.* at 19-30).  Counsel's review of the provided material ultimately led to counsel's forceful cross examination of one of the testifying officers, Officer Bouie, at trial, on the basis of Bouie's prior disciplinary infractions for filing false statements.  (*See* Trial Transcript, Document 1 attached to ECF No. 9 at 144).

   What this record establishes is that trial counsel conducted a more than adequate investigation into the officers' histories, and more than adequately sought any *Giglio* or other impeachment evidence which was available as to the officers involved in Petitioner's arrest.  Nothing in this record suggests that counsel was ineffective in investigating and preparing for trial, the ACLU petition notwithstanding.  Counsel clearly investigated and used the history of the officers in defending Petitioner.  Given the initial mistrial and counsel's able representation of Petitioner, it does not appear that counsel was deficient here, and Petitioner has failed to show otherwise.

   Although Petitioner's failure to show deficient performance is sufficient to show that counsel was not ineffective in his investigations, this Court also notes that Petitioner has failed to show that he was prejudiced by counsel's alleged failure to turn up all of the information contained in the ACLU's lengthy petition.  Counsel discovered useful *Giglio* material as to one officer, and used it to attack that officer's credibility at trial.  Counsel likewise moved the court

to reconsider its determination that the gun was admissible on the basis of both this testimony and the testimony of Petitioner's witnesses as to Petitioner's arrest and the state of the car in which Petitioner claims the gun was found. The trial court, after having heard both sides, rejected the testimony of Petitioner's witnesses as being completely incredible, and thus denied the motion for reconsideration. Petitioner's assertions that the testimony of the officers was "ta[i]nted [and] not credible" is insufficient to establish prejudice even without the trial court's credibility findings, and is certainly insufficient in light of those findings and the testimony of various officers that Petitioner was essentially caught red-handed trying to dispose of the firearm in question in Petitioner's case. Petitioner's blanket attempt to indicate that counsel should have found all of the allegations contained in the ACLU petition does not suggest otherwise.[4] Petitioner has thus failed to show that, had counsel conducted further investigation, the outcome of Petitioner's suppression motion or trial likely would have been different. Petitioner has therefore failed to show that he suffered prejudice as a result of counsel's more than adequate investigation, and Petitioner's first ineffective assistance claim therefore must fail. *Judge*, 119 F. Supp. 3d at 280-81.

---

[4] This Court likewise notes that it is doubtful that the collection of allegations and civilian complaints contained in the ACLU report would have been admissible as impeachment evidence in any event. *See, e.g., United States v. Dabney*, 498 F.3d 455, 459 (7th Cir. 2007) (unsubstantiated complaints against an officer not admissible as impeachment evidence). Thus, it is unlikely that counsel could have used that information at trial even if he had possessed it several months before the ACLU produced the petition.

### b. Petitioner's plea-related claim

Petitioner's remaining ineffective assistance of counsel claim asserts that counsel provided him with ineffective assistance in regard to a plea deal offered to Petitioner following the mistrial. As the Third Circuit has explained,

> "[d]efendants have a Sixth Amendment right to counsel, a right that extends to the plea-bargaining process." *Lafler v. Cooper*, --- U.S. ---, 132 S.Ct. 1376, 1384[] (2012).
>
> When addressing a guilty plea, counsel is required to give a defendant enough information " 'to make a reasonably informed decision whether to accept a plea offer.'" *Shotts v. Wetzel*, 724 F.3d 364, 376 (3d Cir. 2013) (quoting *United States v. Day*, 969 F.2d 39, 43 (3d Cir. 1992)), *cert. denied*, --- U.S. ---, 134 S.Ct. 1340[] (2014). We have identified potential sentencing exposure as an important factor in the decisionmaking process, stating that "[k]nowledge of the comparative sentence exposure between standing trial and accepting a plea offer will often be crucial to the decision whether to plead guilty." *Day*, 969 F.2d at 43. In order to provide this necessary advice, counsel is required "to know the Guidelines and the relevant Circuit precedent...." *United States v. Smack*, 347 F.3d 533, 538 (3d Cir. 2003).

*United States v. Bui*, 795 F.3d 363, 366-67 (3d Cir. 2015).[5]

Where a petitioner can show that his counsel provided inadequate assistance in advising him to reject a plea deal, the petitioner must still show that he was prejudiced in so much as "but for his counsel's advice, he would have accepted the plea and that [the] plea agreement would have result in a lesser sentence." *Rickard v. United States*, No. 10-4089, 2011 WL 3610413, at *8 (D.N.J. Aug. 16, 2011); *accord Lafler v. Cooper*, --- U.S. ---, ---, 132 S. Ct. 1376, 1384-85 (2012) (prejudice in this context requires a petition to "show that there is a reasonable probability

---

[5] To the extent that Petitioner's claims rely on case law, such as *Lafler*, which developed after his conviction, the Government "has made a considered decision not to raise a *Teague* [retroactivity] defense, and such argument is therefore waived." (ECF No. 9 at 29 n. 5). This Court therefore need not address any retroactivity questions which would have arisen had the Government not waived such a defense.

that, but for counsel's unprofessional errors, the result of the proceeding would have been different . . . [which i]n the context of pleas [requires] a [petitioner] show the outcome of the plea process would have been different with competent advice"). Thus, a petitioner seeking to establish prejudice in this context must show not only that he would have accepted the plea absent counsel's advice, but also that the deal would not have been withdrawn by the Government, that the Court would have accepted the terms of the plea, and that the petitioner's sentence would have been less severe under the plea agreement. *Lafler*, 132 S. Ct. at 1385.

Petitioner provides little information about his plea claim. In his original motion, Petitioner asserted only the following: "[o]n January 28, 2010[,] trial counsel . . . received a signed plea offer from the U.S. Attorney . . . pertaining to [Petitioner] entering a guilty plea. [Petitioner] submits that trial counsel . . . was ineffective for not proprly advising [Petitioner] of the benefit of accepting a plea offer versus the likely range of punishment he would receive if convicted after trial." (ECF No. 1 at 12). In his amended supplemental petition, Petitioner adds only that "[t]rial [c]ounsel was [i]neffective for failing to properly advise [Petitioner] of accepting [a] guilty plea." (ECF No. 3 at 3). Petitioner has provided no information as to what advice he was given, what advice he believes he was not but should have been given, nor any further elaboration. Petitioner has thus provided little more than a conclusory allegation that counsel was ineffective in advising him as to the January 2010 plea deal.

The evidence which is present in the record clearly indicates that Petitioner was provided with at least some advice regarding the January 2010 plea offer. Specifically, trial counsel specifically made the following statements to the trial court on January 29, 2010:

> [Trial Counsel:] . . . last night I received from the Government a plea offer contained in a letter dated January 28th, signed by [the prosecutor].

> I have reviewed that offer with [Petitioner], and that offer calls for a Base Offense level of 24, a recognition of acceptance of responsibility for two levels down, and a warning that the Government may seek to raise the offense level two levels for obstruction of justice.
>
> That could, if we prevailed in opposing the obstruction of justice, that could leave us [with a sentence] as low as a Level [resulting in a] 77 [month sentence].
>
> THE COURT: All right.
>
> [Trial Counsel:] I've explained these options to [Petitioner]. I've also explained to him that that offer is open today. And he has instructed me that he wishes to reject that offer.

(Document 5 attached to ECF No. 9 at 2-3). The record therefore establishes that counsel informed Petitioner of the plea offer, explained the sentencing exposure under the deal to Petitioner, including an approximate estimate of sentence, and discussed with Petitioner the possible enhancements the Government could seek under the agreement. The record also establishes that Petitioner chose to reject that deal. In the face of these facts, Petitioner's bald allegation that counsel did not provide him with effective assistance is insufficient to establish even a prima facie case of deficient performance. *See Palmer*, 592 F.3d at 395 (a Petitioner fails to establish a prima facie entitlement to habeas relief where he provides "unadorned legal conclusions" without providing sufficient factual support for those conclusions); *see also United States v. Thomas*, 221 F.3d 430, 437 (3d Cir. 2000) ("vague and conclusory allegations contained in a § 2255 [motion] may be disposed of without further investigation by the District Court").

Petitioner has likewise failed to allege sufficient facts to establish a prima facie claim of prejudice. Although it is implied by his claim, Petitioner does not allege that he would have accepted the plea deal had he received "competent" advice. Indeed, in light of the fact that Petitioner continues to contend that his conviction was the result of some sort of police

14

corruption and the fact that Petitioner maintained his innocence through the second trial, it is by no means clear that Petitioner would have accepted the offered deal. This is especially true in light of the fact that Petitioner openly and directly rejected an earlier plea agreement because it did not permit him to appeal the trial court's denial of his suppression motion. (*See* Document 14 attached to ECF No. 9 at 13-14; Document 15 attached to ECF No. 9). As Petitioner has not alleged, let alone provided factual support sufficient to show, that he would have accepted the January 2010 plea agreement, he cannot establish that he was prejudiced by counsel's allegedly deficient performance. *See Lafler*, 132 S. Ct. at 1385. As Petitioner has not provided allegations as to the prejudice arising from counsel's alleged failure to properly advise him, Petitioner's plea agreement claim fails to establish even a prima facie case of ineffective assistance of counsel, and must be denied without an evidentiary hearing as a result. *See Id.*; *Palmer*, 592 F.3d at 395; *Thomas*, 221 F.3d at 437.

### III.  CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c) the petitioner in a § 2255 proceeding may not appeal from the final order in that proceeding unless he makes "a substantial showing of the denial of a constitutional right." "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude that the issues presented here are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Because Petitioner has failed to establish even a prima facie case of ineffective assistance of counsel, Petitioner has failed to make a substantial showing of the denial of a constitutional right. As such, jurists of reason would not disagree with this Court's denial of Petitioner's motion, and Petitioner's claims are not adequate to deserve

encouragement to proceed further. This Court therefore denies Petitioner a certificate of appealability. *Id.*

## IV.  CONCLUSION

For the reasons set forth above, Petitioner's motion to vacate his sentence (ECF No. 1) is DENIED, and Petitioner is DENIED a certificate of appealability. An appropriate order follows.

May 2, 2016

                                          *s/ Susan D. Wigenton*
                                          Hon. Susan D. Wigenton,
                                          United States District Judge